YORK APARTMENTS TENANTS
ASSOCIATION, Petitioner,

v.

DISTRICT OF COLUMBIA ZONING
COMMISSION, Respondent.

The George Washington University,
Intervenor.

No. 02–AA–1061.

District of Columbia Court of Appeals.

Argued Nov. 4, 2003.

Decided July 29, 2004.

Cornish F. Hitchcock, Washington, for petitioner.

Respondent filed a statement in lieu of brief.

Phil T. Feola, with whom Deborah B. Baum, Washington, and Gerard M. Babendreier, were on the brief, for intervenor.

Before REID and WASHINGTON, Associate Judges, and NEBEKER, Senior Judge.

REID, Associate Judge:

Petitioner York Apartments Tenants Association ("YATA") seeks review of an order of the District of Columbia Zoning Commission granting The George Washington University ("GWU") permission to modify a previously approved Planned Unit Development ("PUD") at 1957 E Street, N.W. On review before this court, YATA argues that Zoning Commission Order No. 746–C should be vacated and the case remanded for further proceedings because (1) the Zoning Commission failed to follow the Zoning Regulations governing modifications to previously approved PUDs set forth at 11 DCMR § 2400, *et seq.*, and (2) the Zoning Commission failed to accord "great weight" to the recommendations and testimony of the Advisory Neighborhood Commission. Intervenor GWU challenges YATA's petition on a number of procedural grounds; we consider two—the timeliness of YATA's petition for review and YATA's standing. Because

we ultimately conclude that petitioner YATA does not have standing to maintain this challenge to Zoning Commission Order No. 746–C, we do not reach the merits of YATA's claims.

**FACTUAL SUMMARY**

On November 15, 1993, the Zoning Commission granted Associated General Contractors final approval to construct a PUD at 1957 E Street, N.W. ("E Street property"), and approved the related Zoning Map amendment, changing the property from an SP–2 "special purpose" district to a C–3–C "commercial" district. *See* Z.C. Order No. 746. In June 1999, GWU purchased the E Street property from Associated General Contractors. On August 31, 2001, GWU filed an application with the Zoning Commission requesting permission to modify the previously approved E Street PUD. In accordance with its rules, the Zoning Commission processed GWU's request as a second-stage PUD application. The Zoning Commission held public hearings on November 15, 2001, and January 17, 2002, to consider GWU's request.

On June 10, 2002, the Zoning Commission issued Order No. 746–C, granting GWU permission to modify the E Street PUD. Order No. 746–C was published in the *D.C. Register* on August 16, 2002. 49 D.C.Reg. 8011 (2002). Four days later, on August 20, the Zoning Commission served copies of Order No. 746–C by mail on the parties who appeared before the Zoning Commission in the proceedings below. The Secretary to the Zoning Commission filed a form in the Zoning Commission's record certifying the date of mailing and to whom Order No. 746–C was sent.[1] Be-

---

1. Although the Secretary's certification form says that Z.C. Order No. 960 was mailed on August 20, 2002, this appears to be nothing more than a typographical error. The Case No. that appears on the certification form, 01–17M/93–5F/91–18P, corresponds to Order No. 746–C. Additionally, the list of parties to whom the order was sent are the parties who appeared and participated in the Zoning Commission's hearings that led to the issuance of Order No. 746–C.

cause YATA was not a party in the proceedings below,[2] YATA was not served with Order No. 746–C by mail. However, the Secretary's certification form put YATA on notice that Order No. 746–C had been mailed to the parties on August 20. On September 23, 2002, YATA filed a petition for review of Zoning Commission Order No. 746–C. GWU intervened in the proceedings before this court.

## ANALYSIS

### Timeliness of YATA's Petition for Review

■ GWU contends that this court lacks jurisdiction to consider the merits of YATA's claims because YATA's petition for review was untimely. According to GWU, the time in which YATA had to file a petition for review started to run on August 16, 2002, the date on which the order was published in the *D.C. Register*

and thereby became final and effective.[3] Based on the date the order was published, YATA's petition for review was due no later than September 16.[4] GWU maintains that the later filing date of September 24 for the parties to the Zoning Commission proceeding, based on the date the order was served on them by mail,[5] does not apply to YATA's appeal because YATA was not a party in those proceedings. We disagree.

■ In *Askin v. District of Columbia Rental Hous. Comm'n*, we said "[i]n situations where ambiguity exists regarding the date of an order or decision, this court has resolved the ambiguity in favor of the party seeking review." 521 A.2d 669, 675 (D.C.1987); *see also In re D.R.*, 541 A.2d 1260, 1264 (D.C.1988) ("In [] areas of administrative law, we have emphasized the importance of eliminating ambiguity, and, where we have found ambiguity, we have

2. The fact that YATA was not a party in the proceedings below that led to the issuance of Order No. 746–C does not bar it from petitioning this court for review of that order. *See* D.C.Code § 2–510(a) (2001) ("Any *person* suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to judicial review thereof . . . .") (emphasis added). *Compare* D.C.Code § 2–502(9) ("The term 'person' includes individuals, partnerships, corporations, associations, and public or private organizations of any character other than the Mayor, the Council, or an agency."), *with* D.C.Code § 2–502(10) ("The term "party" includes the Mayor and any person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any proceeding before the Mayor or an agency . . . .").

3. Pursuant to 11 DCMR § 3028.9, "[a] written order setting forth a final action shall become final and effective upon publication in the *D.C. Register*, unless the Commission specifies a later effective date." As written in the order, Order No. 746–C became "final and effective upon publication in the *D.C. Register*; that is, on August 16, 2002."

4. Thirty days from August 16, 2002, was Sunday, September 15; YATA therefore had until the following day, Monday, September 16 to file its petition for review if the date the order was published controls in this case. *See* D.C.App. R. 15(a)(2) ("[P]etition for review [of an agency order] must be filed within 30 days after notice is given, in conformance with the rules or regulations of the agency, of the order or decision sought to be reviewed.").

5. The parties had thirty days from August 20, the date on which the parties were served with the order by mail, plus an additional five days because notice was by mail, to file a petition for review with this court. Accordingly, the parties had until September 24. *See* D.C.App. R. 15(a)(2) ("[P]etition for review [of an agency order] must be filed within 30 days after notice is given, in conformance with the rules or regulations of the agency, of the order or decision sought to be reviewed. . . . If the order or decision is made out of the presence of the parties and notice thereof is by mail, the petitioner will have 5 additional days from the date of mailing.").

construed it against the government agency that drafted the language.") (footnote with citing references omitted). Similar to the circumstances in *Askin,* the Zoning Commission's order of publication in the present case created ambiguity as to when the time for filing a petition for review of Order No. 746–C started to run, because contrary to its rules, the Zoning Commission published the order in the *D.C. Register* prior to serving it on the parties. *See* 11 DCMR § 3028.8 ("In a contested case ... [t]he order shall be published in the *D.C. Register.* Prior to publication in the *D.C. Register,* copies of the order shall be served on any party who appeared and participated in the hearing in person or by authorized representative."). This ambiguity no doubt led YATA to rely on the later notice as the date from which to appeal. Indeed, YATA could have concluded reasonably that the Zoning Commission would not establish two different rules governing the timeliness of a petition for review—one for a party, and the other for an aggrieved person. Accordingly, we resolve this ambiguity in favor of YATA and hold that YATA's petition for review was timely because the time for filing started to run on August 20, the date on which the Zoning Commission served the order on the parties, not August 16, the date of publication.

The fact that a sentence in the order itself stated that Order No. 746–C was to become "final and effective upon publication in the *D.C. Register;* that is, on August 16, 2002" does not control whether YATA's petition for review was timely. As we have repeatedly held, "[w]hat matters here [ ] is not when the order became 'final' under the Board's rules, but when it became reviewable." *Jackson v. District of Columbia Employees' Comp. Appeals Bd.,* 537 A.2d 576, 577 (D.C.1988) (holding that the time for filing a petition for review starts to run when the order is served on the parties, not thirty days later when the

order became "final" under the Board's rules); *accord, North Cleveland Park Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 541 A.2d 912 (D.C. 1988) (per curiam) (holding that the time for filing a petition for review starts to run when the order is served on the parties, not when the order becomes effective, which according to the Board's rules occurs ten days after the order is issued); *Glenwood Cemetery v. District of Columbia Zoning Comm'n,* 448 A.2d 241 (D.C. 1982) (*per curiam* ) (holding that the time for filing a petition for review starts to run when the order is served on the parties, not when the order is published in the *D.C. Register* and thereby becomes final and effective pursuant to the Zoning Commission's rules). Thus, we hold that the time within which a petition for review must be filed commences upon service of the order on the parties and notice thereof to nonparties through the Secretary's filing of the certification form, not publication in the *D.C. Register,* which is an "entirely ministerial act." *See Glenwood Cemetery, supra,* 448 A.2d at 242. We also agree with YATA that having a uniform filing deadline for all petitioners, both parties and non-parties alike, is preferable to the two-tiered filing timetable that would result if we adopted GWU's argument. Accordingly, we conclude that YATA's petition for review was timely, and we have jurisdiction to consider the case.

### YATA's Standing to Challenge Zoning Commission Order 746–C

GWU argues that even if we have jurisdiction, this case must nevertheless be dismissed because YATA lacks standing to maintain this petition for review of Zoning Commission Order No. 746–C, due to YATA's failure to allege any personal injury in fact to its members. We agree.

To resolve issues of standing, we "look to federal standing jurisprudence,

both constitutional and prudential." *Friends of Tilden Park v. District of Columbia,* 806 A.2d 1201, 1206 (D.C.2002) (internal quotations omitted) (quoting *Speyer v. Barry,* 588 A.2d 1147 (D.C. 1991)). We recently summarized our basic principles of standing as follows:

> The *sine qua non* of constitutional standing to sue is an actual or imminently threatened injury that is attributable to the defendant and capable of redress by the court. The plaintiff, or those whom the plaintiff properly represents, must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. A mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved for standing purposes.

*Id.* at 1206–07 (internal quotation marks, citations, ellipses, and brackets omitted). "[U]nder the so-called prudential principles of standing, a plaintiff may assert only its own legal rights, may not attempt to litigate generalized grievances, and may assert only interests that fall within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 1207 n. 5 (internal quotation marks omitted) (quoting *Community Credit Union Servs., Inc. v. Federal Express Servs. Corp.,* 534 A.2d 331, 333 (D.C.1987)).

YATA lacks standing because it has failed to allege any actual injuries suffered by its members that are not generalized grievances. The two claims raised by YATA in its original brief—(1) the Zoning Commission erred in approving GWU's modifications to the original PUD, and (2) the Zoning Commission failed to accord "great weight" to the recommendations and testimony of the Advisory Neighborhood Commission—amount to nothing more than an allegation of the right to have the Zoning Commission act in accordance with its rules and regulations. Such claims are insufficient to establish standing because they are generalized grievances, not personal to the petitioner. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 575–76, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted) ("[W]e have . . . held that an injury amounting only to the alleged violation of a right to have the Government act in accordance with law was not judicially cognizable because assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning."); *Allen v. Wright,* 468 U.S. 737, 753–55, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1983).

YATA also raised the more specific allegations that the Zoning Commission's decision to grant GWU's request to modify the original PUD will result in the loss of new property tax revenue, new jobs, and new and essential housing in the Downtown area. These injuries, however, are not personal to YATA, but generalized grievances affecting the Downtown area at large; thus, they are also insufficient to establish standing. *Cf. Lujan, supra,* 504 U.S. at 574, 112 S.Ct. 2130 (discussing multiple cases in which taxpayers were found to lack standing because taxation is of general interest, common to all members of the public); *Warth v. Seldin,* 422 U.S. 490, 502–03, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (determining that petitioners' allegations were general grievances because they failed to show that the absence of cheaper housing in the subject neighborhood resulted in their inability to live there); *Speyer, supra,* 588 A.2d at 1161, 1161 n. 27 (finding that allegations of inappropriate use of tax revenues was not per-

sonal to the petitioners, but a generalized grievance, even though the petitioners were residents of the area).

 YATA has failed to establish that it has suffered an actual injury as a result of the Zoning Commission's decision. YATA claims that "[i]ts injury stems from the fact that its residents live directly across the street from the proposed new structure, which GWU is proposing to construct not as an office/condominium structure, but as a classroom/dormitory structure, a change that they view as injurious to their rights as permanent residents interested in the quiet enjoyment of their homes" and that it is "challenging an agency ruling that affects what its residents see and hear out their windows, as well as the livability of their neighborhood." These statements, however, do nothing more than point to YATA's close proximity to the modified PUD and assert, without explication, that the changes approved by the Zoning Commission will interfere with YATA's members' enjoyment of their homes. While threats to non-economic interests such as use and enjoyment may constitute an injury in fact, the alleged threat to YATA's members' quiet enjoyment of their homes is merely conjectural and hypothetical; YATA fails to articulate a concrete and specific threat or injury. *See Lee v. District of Columbia Bd. of Appeals & Review*, 423 A.2d 210, 217 (D.C. 1980) (citations omitted) ("Petitioners must allege an injury or aggrievement which is real, perceptible, concrete, specific and immediate, rather than one that is conjectural, hypothetical or speculative."). YATA's close proximity to the E Street property alone does not make every use, or change in use, of the subject property injurious to YATA's members. There is nothing in YATA's briefs or in the record to indicate that YATA has suffered, or is in immediate danger of suffering, any direct harm as a result of Zoning Commission Order No. 746–C. Consequently, we are constrained to conclude that YATA lacks standing to maintain its petition for review.[6]

---

6. The third procedural argument raised by GWU is that YATA is estopped from presenting its claims to this court because YATA did not raise them before the Zoning Commission, as YATA did not seek party status or even appear in the proceedings below. Although we need not address this issue, having already found that YATA lacks standing, we explain briefly why GWU's estoppel claim is without merit. GWU's allegation is factually incorrect; Laetitia Combrinck, the president of YATA, testified at the January 17, 2002, public hearing before the Zoning Commission. Thus, while it is true that YATA did not seek party status, YATA did appear before the Zoning Commission. And pursuant to D.C.Code § 2–510, persons (*i.e.*, non-parties) are entitled to seek judicial review of agency orders and decisions. It would, therefore, be unreasonable to say that non-parties are permitted to seek review, but then hold that unless the non-party petitioner was a party to the agency proceeding it is estopped from raising any issues.

We agree with the D.C. Circuit that "[s]o long as the appellant or some other party has put an objection on the record, the obligation to exhaust is discharged." *Safir v. Kreps*, 179 U.S.App. D.C. 261, 266, 551 F.2d 447, 452 (1977); *see also Office of Communication of United Church of Christ v. FCC*, 250 U.S.App. D.C. 312, 316, 779 F.2d 702, 706 (1985) (footnote with citations to cases from the other U.S. Circuit Courts omitted) ("It is not always necessary for a party to raise an issue, so long as the Commission in fact considered the issue.") The cases cited by GWU in support of its claim that YATA is estopped from raising its claims before this court because it did not raise them before are inapposite. In the cases cited by GWU, the petitioners were estopped from bringing their claims on appeal because the issues had never been raised before the agency. Here, however, the issues raised by YATA in this court were raised before the agency, just not by YATA itself. Thus if YATA had standing, it would not be estopped from presenting its claims to this court because YATA's claims had been raised by parties in the proceedings before the Zoning Commission.

Accordingly, for the foregoing reasons, we dismiss YATA's petition for review of Zoning Commission Order No. 746–C.

*So ordered.*